VENDO COMPANY, Plaintiff,

v.

WM. F. CROME & COMPANY, d/b/a
Coca-Cola Bottling Company,
Defendant.

No. 11986.

United States District Court
W. D. Missouri, W. D.

Dec. 29, 1960.

As Corrected April 20, 1961.

Lawrence C. Kingsland of Kingsland, Rogers & Ezell, St. Louis, Mo., Donald E. Johnson (of Hovey, Schmidt, Johnson & Hovey), Kansas City, Mo., of counsel, for plaintiff.

Ralph H. Hudson and Wm. B. Kerkam, Washington, D. C., Thomas E. Scofield, Jr., of Cameron, Kerkam & Sutton, Kansas City, Mo., of counsel, for defendant.

DUNCAN, District Judge.

This action was instituted by the plaintiff, a Missouri corporation, with its principal place of business in Kansas City, Missouri, against the defendant, Wm. F. Crome & Co., d/b/a Coca Cola

Bottling Company, and the Clinton Manufacturing Company, Inc., a Missouri corporation, both engaged in business at Clinton, Missouri.

The action arises under § 281 Title 35 U.S.C.A. for alleged infringement of Claims 3–5–6 of U. S. Letters Patent 2,766,906, entitled, "Selective Bottled Beverage Vending Machine", issued on October 16, 1956, to The Vendo Company, as assignee of an application filed by Floyd V. Bookout, et al., on October 15, 1951. The patent is now owned by the plaintiff.

Defendant Crome admitted having used the accused structure within the territorial jurisdiction of this court by installing and operating same on the premises of the Clinton Manufacturing Company in Clinton, Missouri, under an arrangement asserted to have been made by the said defendant directly with the employees of the Clinton Manufacturing Company.

By mutual consent the suit was dismissed as to the Clinton Manufacturing Company, without prejudice, before the case came on for trial.

The accused structure was admittedly manufactured and sold to the defendant by Cavalier Corporation, a Tennessee corporation, having its principal place of business in Chattanooga, Tennessee. It was stipulated that the accused structure would be represented in the record of the action by evidence relating to Model CS–72 and CS–96 selective, bottled beverage vending machines manufactured by Cavalier, and that such Model CS–72 and CS–96 machines of Cavalier, including certain successive minor variations thereof, are, in all respects material to the suit, identical to each other and to the particular accused machine sold to defendant by Cavalier and used by defendant within the territorial jurisdiction of this court.

Cavalier has agreed with the defendant Crome to hold the latter harmless for damages and costs in connection with this action, and to bear the monetary expense of defending the same. Cavalier also selected the attorneys on behalf of the defendant Wm. F. Crome & Co., to defend the case, subject to the approval of the defendant Crome.

■ Plaintiff requests the court to find that Cavalier openly and with the knowledge of the plaintiff, controlled and conducted the defense of this action through attorneys of its own selection. It was apparent to the court that during the trial of the case the defense was in fact being conducted by counsel for the defendant on behalf of Cavalier, as it was the only one involved in the litigation who stood to lose or to gain by a determination of the issue in controversy.

The type of mechanism involved in this controversy is of comparatively recent origin and results more or less by evolution from the early types of containers for the sale of cold bottled beverages. The early types used were simple old-fashioned iceboxes in which the bottles were placed on ice or in ice water for the purpose of cooling; the hinged type or sliding top of the chest afforded access to the interior where the vendor or the customer removed the bottle of his choice from the ice or fished it out of the ice water, paid for it and the top was again closed. This operation required a more or less personal relationship between the vendor and the vendee by payment directly to the vendor of the purchase price.

Plaintiff early developed a coin-controlled top for such coolers or chests. The top contained a mechanism which was released by the deposit of a coin. This cooler was a decided improvement over the older type, but it did not afford a choice of flavors or types of beverage.

The next development of a machine offered to the public using the plaintiff's description was a "type of machine similar to the original, horizontal, hinged lid coolers, except that the cooling tank was provided with a series of parallel rails therein, presenting a maze of paths along which bottles of beverages could be stored with the rails engaging their necks until they were manually shifted by

a customer along appropriate paths to a point of release through a coin-controlled release mechanism. The last mentioned machines, although inconvenient to operate and subject to other disadvantages, did permit the handling of bottled beverages of different flavors in a coin-controlled machine and, for that reason, gained a considerable commercial acceptance."

Although there had been numerous types of vending machines in use prior to the beginning of the last decade, after that time the idea in the mind of the public of acquiring merchandise through a vending machine automatically, began to point the way to a new field in the sale of merchandise generally. There had been efforts in this field to develop a practical type of selective beverage vending machine which is the subject of this suit. Such attempts had been to provide selective vending machines both in bulk and bottled products.

Efforts to develop the present machine apparently had not been entirely successful in providing means for selectively vending bottled beverages of various kinds and flavors from supplies maintained under refrigeration in an upright cabinet having a relatively small customer access door in the front thereof through which a customer, upon deposit of a coin, could select and withdraw the lower-most bottle from the shelf for any desired flavor.

But, plaintiff's present structure supplied that demand and it also provided a mechanism which prevented the withdrawal of additional bottles until after a second coin had been deposited and the release mechanism again adjusted to the withdrawal of a second bottle or choice.

Both of the devices before the court— plaintiff's device and the accused device, using the description of the plaintiff again, "are characterized by the provision of a novel combination and arrangement of structural parts presenting a captive lock mechanism including a series of shiftable plates having swingable spreaders therebetween coupled with bottle releasing gates provided for each

shelf and all so co-operatively related as to effectively protect the machines against the more ordinary types of effort to obtain more than one bottle from a single coin deposit. The patented machines are further provided with an elongated bar member movable by the lower end plate and having notches co-operate with end portions of the spreaders so arranged and combined with the other parts as to protect the machine against abnormal types of effort to rob or 'jack-pot' them."

The selective bottled beverage vending machines produced by plaintiff under the patent in suit, including the Vendo Model V-110 first marketed in late 1951 or early 1952, and the later Vendo Model V-81, were accorded prompt, continuing and marked commercial acceptance.

The accused structure was designed in late 1956 or early 1957, by an employee of Cavalier, who was furnished by Cavalier with both a copy of the patent in suit, and a specimen of the machines being made by plaintiff under the patent in suit. Cavalier's employee was instructed "to design a machine to do a specific job and to make it better and, too, of course, to avoid any infringement".

Defendants claim first, that Claims 3– 5–6 are invalid for lack of invention, and second, that they are not infringed by Cavalier because "they contain what we think are material limitations which do not apply to the accused device".

To sustain its charge of lack of invention and in discussing the prior art, the defendant calls the attention of the court to the patents of Howe, Clark, Gabrielsen, Hanson, Stewart, Smith and others, for developing vending machines for beverages and other merchandise long prior to Vendo, and contends that these were— "Upright cabinets, mechanical refrigeration, inclined shelves, dividers at the lower ends of the inclined shelves, coin-controlled gates, and various types of coin-controlled locking mechanisms employing slidable plates arranged either vertically or horizontally, together with wedge-type or rotatable spreaders", and that they were all old and well known in the art.

The Claims which are in controversy here, 3–5–6 are:

"3. In a selective vending machine, an article storage cabinet having a vertical series of article supports; a swingable gate for each support respectively normally disposed to block removal of the articles from the supports; and captive mechanism common to the gates including a stack of vertically reciprocable plates each having a portion of one end thereof in normally abutting relationship with a portion of the end of the plate next adjacent thereto, a dog element secured to each gate respectively for swinging movement therewith, each element having a pair of spaced projections, one on each side respectively of the axis of swinging movement thereof, the projections extending between spaced sections of said ends of the plates and normally disposed to restrict movement of the plates in one direction, a lock adjacent the lowermost end plate for holding the plates against movement in the opposite direction, said lock being releasable, permitting swinging movement of one of the elements to a position opening its gate for release of an article, one of the projections on said element moving the plates therebelow downwardly, the opposite projection moving the plates thereabove upwardly to a position engaging the projections on their respective elements, and means below said plates for limiting downward movement thereof, whereby when the said one element is in said article releasing position all the remaining gates are disposed in a locked position to prevent removal of articles from the associated supports."

"5. In a selective vending machine of the type having a vertical series of article supports and a swingable gate for each support respectively normally disposed to block removal of the articles from the supports, captive mechanism common to the gates including a series of aligned, reciprocable plates, each having a portion of one end thereof in normally abutting relationship with a portion of the end of the plate next adjacent thereto; a spreader device adapted to be secured to each gate respectively, each device having means disposed between a pair of plates, and each swingable to and from a position moving the plates on opposite sides thereof relatively away from each other, said means of all of said devices being disposed after movement of one device to spread a pair of plates to restrict movement of all of the plates in one direction; structure adjacent one of the end plates for releasably holding the plates against movement in the opposite direction; and means below said plates for limiting downward movement thereof upon release of the plates by said structure, whereby when the said one device is disposed in said position its associated gate is opened to permit delivery of an article from the support and all the remaining gates are in a locked position to prevent removal of articles from their associated supports."

"6. In a selective vending machine as set forth in claim 5 wherein the captive mechanism includes an elongated member disposed adjacent said plates and operably coupled to the lowermost plate for movement thereby, when said one of the devices is swung to said position, said member being provided with a clearance notch for each of the means on said devices respectively, the notches being normally disposed in alignment with their respective means on the devices for registry therewith when the devices are all disposed in a position closing the gates to prevent removal of all of the articles from their supports, and being movable with said member into a locking position whereby when said one of the devices is swung to said position,

the means on said one device is in registry with its associated notch, and the remaining notches are out of alignment with their respective means to prevent swinging movement of any of said remaining devices."

It will be noted that these Claims refer definitely to a "captive mechanism" and not to other types of mechanism or design generally applicable to vending machines. All of these patents, except Clark, were before the Patent Office at the time of the granting of the patent and all of their elements and claims were duly considered by the Patent Office.

Defendant now contends that had the Clark patent been before the Patent Office and its claims duly considered, it would have anticipated the claims of the plaintiff and its patent would have been denied. Of course, I am unable to say what the Patent Office would have done. However, I have examined the Clark Patent and I am unable to find anything in it to justify defendant's contention, or that would have anticipated plaintiff's claims.

There is one patent to which the defendant calls the attention of the court, which I think is deserving of discussion and differentiation, as between it and the plaintiff's patent, and that is the Clark Patent, Exhibit 17. Like the other devices, the Clark Patent has a series of vertical compartments to contain merchandise to be released upon the insertion of a coin. In other words, a coin-controlled vending device.

This machine, however, is not designed, as I understand the patent and the exhibit of the machine before the court, for the sale of bottled refrigerated drinks. It thus contains a device which prevents the taking therefrom of more than the article contained in one compartment at a time. This device has as many compartments as the manufacturer may desire; each compartment is closed by a gate or door which constitutes a part of the compartment itself. The bottom portion of the compartment or door is attached to, but operates free of a cylinder element which extends through from one end of the compartment to the other. The door is fastened to the cylinder simply by means of small straps shaped around the cylinder, the ends of the cylinder which extend through the sides of the compartment are rectangular approximately one inch long, and probably three-eighths of an inch wide.

There are movable plates secured to the sides of the container. The plate above each container and adjacent to rectangular extension is cut into a one-half square that conforms in size to the horizontal extended element above described; to the front of the door is attached a knob by means of a simple screw that extends inwardly and on the end thereof is a head.

There is likewise attached to the bottom portion of the cylinder immediately above the compartment from which it is sought to remove the merchandise, a screw extending downward which also has a head on the end thereof, and as the door to the compartment is pulled open, the end of the screw attached thereto comes in contact with the end of the screw attached to and extending from the cylinder above, and this causes such above cylinder to be rotated to 180°, thus bringing the end of the extended element into contact with the plates below the compartment from which the merchandise is being taken, and the upper end thereof resting in the half-square above described, which prevents any other drawer of such device from being opened until the compartment from which the merchandise is being taken has been closed.

When the drawer is closed the above operation acts in reverse, the screws come into contact with each other, the cylinder is returned to its original position releasing the plates above and below so that when another coin is inserted, the operation may be repeated. This also, it seems to me, while it performs the function of securing the above and below compartments, performs the function in an entirely different manner and by a different type of device.

Both machines were designed for the vending of bottles of soft drinks, and, as a matter of fact, any other commodity that is bottled in the same type of bottles as soft drinks or soda pop, and various flavors may be dispensed in the same machine and selected by the customer according to his taste.

The containers from which the bottles are taken are secured to each other in a vertical or upright manner one above the other and to each of the compartments or containers from which the bottle is to be taken is attached a shelf into which the bottles are placed at an angle, so that by gravity when a bottle is taken from a particular compartment, another bottle immediately rolls into its place. Different size bottles may be dispensed in the vending machine, in fact, different sizes or types of bottles may be placed in the same supply shelf.

The lower-most bottle on each shelf is in a position to be withdrawn by a customer from its compartment through an opening which is guarded by a swingable gate through which the bottle is removed.

In plaintiff's manufactured device the vertical movable plates controlling the upper and lower compartment from which the bottle is being removed are located on the side and to the front of the compartment and immediately to the right of the opening guarded by the gate, and the lugs which raise and lower such plates are attached directly to the gate mechanism.

When a coin is inserted into the machine it releases the coin-controlled mechanism, the purchaser reaches into the compartment, grasps the neck of the bottle and pulls it forward, and as it is brought forward, the sides of the bottle contact the gate thus pulling it forward with the bottle, and as it does so, the dog element or lug attached to such gate moves therewith, one end up and one end down and comes in contact with and moves the upper plate upward and the lower plate downward tending to secure the compartments above and those below against the removal of additional bottles until an additional coin has been inserted therein.

The operation of the accused machine is practically identical with that of plaintiff's machine. There are some slight differences however. The stack of plates in defendant's machine are to the back and on the left side of the compartments.

In plaintiff's machine the lugs controlling the movement of the plates are attached directly to the gate mechanism, whereas in defendant's machine there is a small strap of iron attached to the gate mechanism and it extends to the rear and immediately opposite the stack of plates and there connects with the lug or dog, at that place, so that instead of the direct movement of the dog by the gate as in the plaintiff's machine, in the defendant's machine the dog element or lug is operated by the strap extending from the gate. These are simple structural changes. With this exception, there is no difference in the description and in the operation of the two machines. The plates are moved upward and downward in the same manner, securing the compartment above and below that from which the bottle is being removed in the identical manner.

It was clearly demonstrated to the court that plaintiff's device was subject to being "jack-potted". That is, that by certain manipulation of the device, an additional bottle in the compartment above that from which the first bottle was being removed could also be removed at the same time without inserting an additional coin in the absence of the Common Bar 96, hereafter described.

The same practical demonstration upon the accused device revealed that one who was "in the know", could "jack-pot" the bottles in all of the compartments with one coin, that is, from the machine as it has been described above.

One of the principal elements in plaintiff's patent is what is designated as the "Common Bar 96". This bar is designed to prevent such "jack-potting". There is no doubt about it performing the function for which it was designed. Like

some other elements of the claims, it is the defendant's contention that this common bar or safety bar is not new, novel or patentable. It is defendant's contention that the design of the plaintiff's Common Bar 96 is almost exactly the same as that found in defendant's Exhibit 19, referred to throughout the evidence as the "Gabrielsen" Patent.

The element or the bar in the Gabrielsen Patent, which is a gum vending machine, has long been in use and is still in use in some places. A machine made under the Gabrielsen Patent was brought by the defendant from Washington, D. C. where it has been in active use. It must be conceded that from a visual inspection, plaintiff's Common Bar 96 bears very close similarity in structural design to the element to be found in Exhibit 19. However, in the opinion of the court, Common Bar 96 performs an entirely different function from that performed by the bar in the Gabrielsen Patent.

Plaintiff's manufactured device operates perfectly insofar as the eye can determine, and so far as the ordinary individual could observe without the Common Bar 96. However, that is not true of the Gabrielsen Patent. If the comparable bar were removed from that machine it would not function at all. It does serve as a locking device and prevents more than one stick of gum being taken from the machine for one coin.

Both devices operate practically the same insofar as the removal of the bottle is concerned and the operation of the mechanism and the movement and securing of the plates above and below the compartment from which the bottle is being taken, although, as heretofore stated, there is some difference in mechanical design of defendant's machine.

The safety device which plaintiff designates as the "Common Bar" is designated by defendant as a "preventer strip", and is of a different shape and design than the "common bar" in plaintiff's machine. In fact, it is a "strip" not a "bar". It is much wider and thinner and instead of having the notches and the projections with which the lugs make contact, as will be observed on plaintiff's Common Bar 96, it has openings therein through which the lugs extend. Like plaintiff's common bar it affords absolute safety against "jack-potting".

The Common Bar 96 probably comes in contact with the dogs or lugs which restrain the movement of the *"above"* and *"below"* plates, whereas the comparable bar or "preventer strip" in defendant's machine does not come in contact with such dogs or lugs, but the space therebetween is probably no more than $\frac{1}{16}$th inch. This space is created by the manner in which the strip is attached and is purely structural. Apparently it does not effect the purpose for which it is attached.

I cannot agree with the contention of the defendant that "The Cavalier captive mechanism utilizes a principle of operation substantially different from that of the patent in suit providing vertically arranged lugs and plates freely movable over these lugs in a vertical direction when a gate is opened for preventing pilfering by opening more than one gate at a time, while utilizing a preventer strip only to insure that the bottom plate always is moved up to latched position when a gate is closed and thereby preventing pilfering by repetitive operation of the same gate."

Observation of the operation of the two devices clearly indicates to me that they perform identically the same function in substantially the same manner to prevent "jack-potting", and that without such safety device, each machine is subject to "jack-potting".

Each of the claims in suit, when properly considered in the light of its history of prosecution and the disclosure of the patent in suit, is clear as to meaning and particularly points out with distinctness the scope of the subject-matter being claimed thereby.

Each of the claims in suit is directed to a novel combination of cooperating parts in a selective vending machine including article supports, gates for the supports and various captive mechanism compo-

nents, all operably associated to perform the selective vending operation of the machine.

Claims 5 and 6 each include in the combination to which they are directed, the anti-pilfering structure of the machine, including the Common Bar 96 and its operative connection with the lower end plate 94.

There is a striking similarity between the manufactured device of the respective parties, as exhibited in court, and an equally striking similarity between the elements of the defendant's manufactured device and Claims 3–5–6 of plaintiff's patent.

The accused structure manufactured by Cavalier and used by the defendant appropriates the essence and substance of the improvements defined by each of the claims in suit.

The state of the art generally at the time of the invention of the patent in suit, was not such that one ordinarily skilled in the art to which the invention related, could have provided the patented structure defined in any of the claims in suit without the exercise of inventive faculties.

None of the machines disclosed in the reference in any of the patents relied upon by the defendant could perform the functions or stand as the structural equivalent of the apparatus defined by any of the claims in suit without substantial modification. The subject-matter of none of the claims in suit was anticipated by any of the prior art relied upon in defense of the action, in any of the patents cited by defendant.

Each of the claims in suit relates to a novel combination and arrangement of elements and parts which are effective together to accomplish a new and useful purpose.

It is my conclusion that plaintiff's patent is valid, and that the captive elements of its manufactured machine are met by the teachings of Claims 3–5–6 of plaintiff's patent, and that defendant's manufactured machine infringes all of said claims.

Both parties have submitted suggested Findings of Fact and Conclusions of Law. Insofar as they are inconsistent with this Memorandum Opinion, Findings of Fact and Conclusions of Law, they are refused.